Carlos GALAVIZ–MEDINA,
Petitioner–Appellant,

v.

Tom WOOTEN, Warden, FCI, Florence, CO, and U.S. Immigration Review Board of Appeals, Respondents–Appellees.

No. 93–1387.

United States Court of Appeals,
Tenth Circuit.

June 20, 1994.

Carlos Galaviz–Medina, pro se.

Frank W. Hunger, Asst. Atty. Gen., Richard M. Evans, Asst. Director, and Francesco Isgro, Atty., Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, DC, for respondents-appellees.

Before LOGAN and SETH, Circuit Judges, and KELLY, District Judge.*

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Appellant Galaviz–Medina filed a petition for writ of habeas corpus in district court seeking review of an immigration judge's denial of discretionary relief from deportation. The district court dismissed the petition for lack of jurisdiction. We hold that although Appellant has the right to seek habeas relief in district court, he does not have a cognizable basis for relief in this instance. We therefore dismiss his petition.

Appellant Carlos Galaviz–Medina is a Mexican native who entered this country as a lawful permanent resident on October 13, 1967. He was eight years old when he entered, and has resided in the United States continuously since childhood. He has no immediate family in Mexico. His father and two of his brothers are permanent residents, and he has another brother who is a citizen of the United States. Although he alludes to a daughter who is an American citizen, the record reflects that he is not in contact with either the girl or her mother.

On March 1, 1991, Galaviz–Medina was convicted of conspiracy to possess with intent to distribute over 100 grams of heroin. He was sentenced to eighty-four months' imprisonment on each of several counts, to run concurrently. He is currently serving that sentence at the federal correctional institution in Florence, Colorado. His prior convictions include child fondling in 1977, aggravated battery in 1982, and burglary in 1984.

Because of these convictions, the Immigration and Naturalization Service (INS) initiated deportation proceedings against Appellant. At the hearing, Appellant conceded deportability based on his criminal convictions; however, he applied for discretionary relief from deportation pursuant to 8 U.S.C.

---

* Honorable Patrick F. Kelly, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

§ 1182(c) (section 212(c) of the Immigration and Nationality Act). That section provides, in part:

"Aliens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section [which concerns, in part, exclusion based on conviction of certain crimes].... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years."

Under § 1182(c), a convicted felon may receive a waiver of excludability if, in the discretion of the Board of Immigration Appeals (BIA), the equities warrant it. *See Hazzard v. INS,* 951 F.2d 435, 438 (1st Cir.). The immigration judge denied the waiver and Appellant appealed to the BIA. The BIA noted in its order that Galaviz–Medina was eligible for a waiver only because he had not yet served five years in prison. Although recognizing certain hardships which deportation would inflict, the BIA affirmed the immigration judge's decision.

Galaviz–Medina did not file an appeal of the BIA's decision with this court. *See* 8 U.S.C. § 1105a(a)(2) (petition for review must be filed in judicial circuit where the administrative proceedings were conducted); 8 U.S.C. § 1105a(a)(1) (an alien convicted of an aggravated felony must file his petition for review within thirty days after issuance of the BIA's decision). In his objection to the magistrate judge's report and recommendation in the district court in this matter, Galaviz–Medina stated he did not appeal because he was not aware there was further review and the inmate helping him was transferred. Rec.Vol. I, doc. 12 at 2–3. Although he admits he received a copy of the BIA's decision, the decision does not include an explanation of his appellate rights.

On July 19, 1993, Galaviz–Medina filed a habeas corpus petition under 28 U.S.C. § 2241 in the United States District Court for the District of Colorado, arguing that the immigration judge and the BIA abused their discretion by not issuing a waiver of deportability. He requested the district court to issue an order deeming the BIA's decision arbitrary and capricious and an order waiving his deportation. Rec.Vol. I, doc. 4 at 9. In response, the United States Attorney representing the immigration review board filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Galaviz–Medina's failure to appeal through the statutory process prevented him from seeking review. The magistrate judge ultimately recommended that the motion be granted, and the district court adopted that recommendation. In addition to the final order of deportation outstanding against Appellant, the INS filed a detainer with the appropriate federal prison authorities.

On appeal, Appellant raises two issues. First, he alleges that the INS abused its discretion in denying discretionary relief under 8 U.S.C. § 1182(c). Second, he argues that the district court improperly dismissed his petition for writ of habeas corpus for lack of jurisdiction.

I

Appellant's claims raise a difficult question of how to reconcile § 1105a(a), which mandates that judicial review be had only in the court of appeals, with § 1105a(a)(10), which preserves the right of habeas corpus review of orders of deportation.

When the current Immigration and Nationality Act was originally passed in 1961, Congress made clear its desire to limit judicial review of deportation orders to the circuit courts. *See United States ex rel. Marcello v. District Director,* 634 F.2d 964, 968 (5th Cir.) (exclusive review provision was designed "to eliminate the inordinate delays that Congress perceived by providing for ... review ... in the courts of appeals, eliminating any initial resort to the district courts...."). The codification of that desire is found in 8 U.S.C. § 1105a(a). That section gives the courts of appeals exclusive jurisdiction over "the judicial review of all final

orders of deportation ... made against aliens within the United States."

In seeming contradiction to that language, however, is § 1105a(a)(10), which provides that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." Judge O'Conner of the Kansas District Court posed the resulting query this way:

> "We must decide whether section 1105a(a)[10]: (1) extends to all claims made by persons held in custody under deportation orders; or (2) is available to review only those claims that do not directly challenge 'final orders of deportation.' In other words, the question is whether the habeas corpus jurisdiction established in section 1105a(a)[10] is limited to only those matters that fall outside the scope of the exclusive jurisdiction provision in section 1105a(a)."

*El–Youssef v. Meese,* 678 F.Supp. 1508, 1513 (D.Kan.). The broad definition which the Supreme Court has given to "final orders of deportation" does not lend clarity to this difficult question. In fact, the circuits are split in their response. *Compare Daneshvar v. Chauvin,* 644 F.2d 1248, 1250–51 (8th Cir.), *with Marcello,* 634 F.2d at 968.

Generally, the courts that have addressed this issue have relied heavily on the legislative history of the 1961 Immigration Act. *See El–Youssef,* 678 F.Supp. at 1514–17 (discussing legislative history); *Marcello,* 634 F.2d at 967–70. The House Report states:

> "The section clearly specifies that the right to habeas corpus is preserved to an alien in custody under a deportation order. In that fashion, it excepts habeas corpus from the language which elsewhere declares that the procedure prescribed for judicial review in circuit courts shall be exclusive. The section in no way disturbs the Habeas Corpus Act in respect to the courts which may issue writs of habeas corpus: aliens are not limited to courts of appeals in seeking habeas corpus."

H.R.Rep. No. 1086, 87th Cong., 1st Sess.. 29, *reprinted in* 1961 U.S.C.C.A.N. 2950, 2973. Likewise, the Supreme Court has stated that its interpretation of the exclusive jurisdiction provision of § 1105a should "in no way [impair] the preservation and availability of habeas corpus relief." *Foti v. INS,* 375 U.S. 217, 231, 84 S.Ct. 306, 315, 11 L.Ed.2d 281. However, the above quoted language does not give clear guidance on the limits of habeas corpus review.

Specifically, the Fifth Circuit has held that the only requirement for habeas relief is that the petitioner is in the custody of the INS and that the issue challenged need not be limited to a "constitutional core." *Marcello,* 634 F.2d at 969, 971–72. The court relied on legislative history for this holding, reasoning that because legislative history was silent as to the type of claims that could be brought in habeas and focused on the custody requirement, any claim could be brought in habeas. *Id.* at 968 (quoting H.R.Rep. No. 565, 87th Cong., 1st Sess. 1) ("The writ of habeas corpus is specifically reserved to an alien held in custody pursuant to an order of deportation."). The *Marcello* court ruled:

> "[The legislative history] seem[s] to indicate that the Congress contemplated alternative methods of obtaining review, one available to aliens not 'held in custody' and the other to those who were. We see little logic and less fairness in laying it down that the scope of review available to an alien may be narrowed by the occurrence of an event quite beyond his control, the action of the Attorney General in taking him into custody. Rather than such an effect, what Congress intended, we think, was to abolish in as many cases as possible the district court step in direct appeals and the employment by the alien of *both* modes of review successively. Our conclusion in this line is reinforced by the simple language of section 1105a(a)[10], providing that 'judicial *review*' of the deportation order may be had in habeas corpus proceedings by an alien in custody."

634 F.2d at 972; *see also Williams v. INS,* 795 F.2d 738, 745 (9th Cir.) (adopting holding in *Marcello,* but doing so "without the conviction that attends a holding deemed unquestionably correct"). *Marcello* gives very broad review in habeas by giving any petitioner who is in custody the right to bring a

habeas petition in district court, regardless of the nature of the claim.

In opposition to this, The Eighth Circuit has held that habeas relief is available only when a petitioner is in custody and is not challenging the deportation itself. *Daneshvar*, 644 F.2d at 1250–51. The court in *Daneshvar* construed § 1105a(a) "to confer exclusive jurisdiction on courts of appeals in all cases where the validity of a final order of deportation is drawn in question, and to limit [§ 1105a(a)(10) ] to review of the denial of discretionary relief where deportability itself is not an issue." 644 F.2d at 1251. The Eighth Circuit premised this holding on the supposition that the "exception would swallow the rule" if every alien in custody could seek habeas relief, regardless of the issue, as an alternative to the exclusive jurisdiction of the circuit courts. *Id.; see also Stevic v. Sava*, 678 F.2d 401, 404 n. 5 (2d Cir.); *Te Kuei Liu v. INS*, 483 F.Supp. 107, 109 (S.D.Tex.); *United States ex rel. Parco v. Morris*, 426 F.Supp. 976, 978 n. 4 (E.D.Pa.).

This circuit reserved ruling on this issue in *Salehi v. District Director*, 796 F.2d 1286, 1289 (10th Cir.), but did find that if a petitioner is in custody and is not challenging the validity of a deportation order, habeas relief is available. ("We thus need not determine whether the court was correct in construing section 106(a)(9) [currently § 1105a(a)(10) ] to provide habeas jurisdiction only over those claims not attacking the validity of the deportation order."). *But see El–Youssef*, 678 F.Supp. at 1516 (agreeing with the holding in *Marcello* and allowing petitioner in custody to challenge final deportation order). This court has addressed the issue, however, in dicta in an earlier opinion, *Pilapil v. INS*, 424 F.2d 6, 8–9 (10th Cir.).

In *Pilapil*, this court commented that an alien could challenge a deportation order through habeas in the district court where he alleged that to deport him, under the circumstances, would be unconstitutional. *Id.* at 9. The court stated:

"Thus, if Pilapil were protesting the factual determination that he is deportable or the refusal to grant him the privilege of voluntary departure, our jurisdiction would be clear. In that case, the petitioner, to have the decision overturned, would have to show that the decision is without rational basis and is arbitrary, capricious or an abuse of discretion.

"The tenor of the issues raised by Pilapil, however, is not that the deportation order is not called for by the facts given, but rather that to deport him under the circumstances here would be unconstitutional. Recognizing that these issues could be raised in a habeas corpus proceeding, we do not feel that this precludes the court [of appeals] from considering them."

*Id.* at 9 (citations omitted).

*Pilapil* intimates that this court is not as willing to give habeas the broad scope enunciated by the Fifth Circuit, but rather would be inclined to limit habeas review to constitutional or other claims traditionally cognizable under habeas. We do not find this reasoning inconsistent with legislative history. We take the history and the Supreme Court declarations as providing petitioners, who meet certain jurisdictional requirements, the right to collaterally attack a deportation order on habeas grounds, not to a full review in district court of a BIA's deportation decision. We find the key distinction between exclusive review by the court of appeals under § 1105a(a) and § 1105a(a)(10) to be the substance of petitioner's claims rather than the fact that he is in custody.

The plain language of the statute also supports the traditional approach to habeas review. Section 1105a(a)(10) clearly presents the right to habeas as a permissive action; "any alien held in custody pursuant to an order of deportation *may* obtain judicial review thereof by habeas corpus proceedings." (Emphasis added.) The statute does not state that every prisoner in custody must only proceed with a habeas petition, or that such a petition permits an extensive review on the merits of the BIA's decision; it merely preserves the right of a person in custody to challenge constitutionally based claims through habeas.

■ Consequently, we hold that if a petitioner meets the jurisdictional requirements of being in custody pursuant to an order of deportation, as required by § 1105a(a)(10),

the petitioner has the right to pursue habeas corpus relief in district court; however, such relief is restricted by the very nature of habeas corpus collateral attacks. We do not suggest that petitioners who are in custody cannot bring claims of any type directly to the court of appeals. Rather, while we recognize that other courts permit petitioners to make unrestricted allegations in a habeas petition filed under § 1105a(a)(10), we believe the better rule is to recognize that this section only allows for claims which are cognizable under traditional habeas proceedings such as allegations of constitutional due process or equal protection violations.

The issues presented in this appeal focus on whether Appellant's claim must follow the exclusive jurisdiction of § 1105a(a) or whether he has presented a proper habeas corpus claim in district court, as discussed above. *See Pilapil,* 424 F.2d at 8–9 (issues proper for habeas corpus review included right to counsel, unconstitutional delegation of authority, due process claims).

## II

■ Appellant argues in part that the court of appeals does not have exclusive jurisdiction under § 1105a(a) in his situation because he is not challenging a final order of deportation, but rather the denial of discretionary relief. To determine if the district court is barred from hearing his case, we must first determine whether Appellant is directly challenging a "final order of deportation," thus giving the court of appeals exclusive jurisdiction to hear the matter pursuant to § 1105a(a).

The Supreme Court has been called upon often to define the term "final orders of deportation" under 8 U.S.C. § 1105a(a). *See e.g., INS v. Chadha,* 462 U.S. 919, 938–39, 103 S.Ct. 2764, 2777–78, 77 L.Ed.2d 317; *Cheng Fan Kwok v. INS,* 392 U.S. 206, 208, 88 S.Ct. 1970, 1972, 20 L.Ed.2d 1037; *Foti,* 375 U.S. at 219–20, 84 S.Ct. at 308–09. Under this section, final deportation orders include "all determinations made during and incident to the administrative proceeding." *Foti,* 375 U.S. at 229, 84 S.Ct. at 314. This includes discretionary denials of relief. *Id.* at 227–31, 84 S.Ct. at 313–15; *see also Che-*

*Li Shen v. INS,* 749 F.2d 1469, 1472 (10th Cir.) (holding the circuit court has jurisdiction to review denial of a request for adjustment of status made during the deportation proceeding).

Appellant claims that he is not challenging an order of deportation per se, as he admitted his deportability based on his prior criminal record. Rather, Galaviz–Medina argues that he is challenging the BIA's discretionary denial of his request for waiver of deportation. The record reflects that the denial of discretionary relief was made as part of the underlying deportation proceedings. Furthermore, the final deportation order was contingent on the decision whether to waive exclusion. Because the denial of discretionary relief was made as part of the underlying deportation proceedings, Appellant is actually challenging a "final order of deportation." *See Foti,* 375 U.S. at 229, 84 S.Ct. at 314.

Insofar as Appellant is challenging the merits of the final order of deportation, Appellant must seek review in the court of appeals. Under § 1105a(a)(1), Appellant had thirty days to file an appeal from the final order of deportation. Appellant claims that he was not aware of the appellate procedures and therefore did not avail himself of his statutory remedy within the applicable time frame. Nonetheless, Appellant cannot challenge the merits of his deportation order in district court. The district court correctly stated that it does not have jurisdiction to reach the merits of final deportation orders. However, the court failed to consider that Appellant had filed a habeas petition and did not address whether Appellant had raised any cognizable claims under habeas. We now turn our attention to this issue.

## III

■ As we have noted, "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10) (formerly § 1105a(a)(9)). To meet the preliminary jurisdictional requirements, we must determine first, whether Appellant is in custody and second, whether he

is in custody because of an order of deportation.

While it is clear Galaviz–Medina is in the custody of federal authorities, it is less clear whether he is so for purposes of this statute. The sentence he is serving now is a direct result of his federal drug convictions. He has not, as yet, been physically detained by the INS. The first question presented is, therefore, whether the final order of deportation and detainer are sufficient to render him "in custody" under this statute.

At the time the United States immigration laws were overhauled in 1961, the "in custody" requirement was much more literal than it is today. *See El–Youssef,* 678 F.Supp. at 1514 (reciting history). Over the past thirty years, however, the custody concept in criminal cases has broadened considerably, and now includes many situations where the petitioner is not in actual physical custody. *See Hensley v. Municipal Court,* 411 U.S. 345, 350–53, 93 S.Ct. 1571, 1574–76, 36 L.Ed.2d 294. This change in philosophy has likewise applied to habeas actions arising from immigration cases. *See e.g., Salehi,* 796 F.2d at 1289 n. 5 (custody requirement satisfied where aliens were released under court ordered injunction); *Williams,* 795 F.2d at 740–41, 744 and n. 3 (finding petitioner in custody where he was under final deportation order but obtained voluntary departure order); *Marcello,* 634 F.2d at 967 (final deportation order was sufficient to render alien in custody).

Thus, there is general consensus that an alien whose liberty is restricted pursuant to an order emanating from the INS is "in custody" for purposes of satisfying the prerequisites for habeas review. *See generally* 3 Charles Gordon & Stanley Mailman, Immigration Law and Procedure § 81.04[1][b]. The issue is more murky, however, where the alien is serving time for a criminal conviction and seeks relief not from the conviction itself, but from orders arising from his deportation proceedings.

Almost all the circuit courts considering the issue have determined that the lodging of a detainer, without more, is insufficient to render the alien in custody. *Prieto v. Gluch,* 913 F.2d 1159, 1162–64 (6th Cir.); *Orozco v.*

*INS,* 911 F.2d 539, 541 (11th Cir.); *Campillo v. Sullivan,* 853 F.2d 593, 595 (8th Cir.). Only the Seventh Circuit has held that a detainer could, under certain circumstances, be sufficient to satisfy the custody requirement. *Vargas v. Swan,* 854 F.2d 1028, 1032–33 (7th Cir.).

The underlying rationale of the majority view is that a detainer, as distinguished from other INS orders, does not put a "hold" on the alien. *Prieto,* 913 F.2d at 1164. A detainer usually serves only as a notice to federal prison authorities that the INS is going to be making a decision about the deportability of the alien in the future. *Campillo,* 853 F.2d at 595. The reasoning follows that the detainer does not serve to establish conclusively either present or future restraints on his liberty. *Id.* Because there is no actual claim to the alien following the completion of his criminal sentence, there is no custody.

Here, however, the record suggests not only that a detainer was lodged, but also that there is a final deportation order in place. Appellant did not provide a copy of this document in the record; however, it is reasonable to assume that the deportation order establishes conclusively the INS's right to custody following the expiration of his current prison term. Consequently, the INS has a more concrete interest in this alien than those cases which have concluded the detainer is insufficient to satisfy the custody requirement. *See Salehi,* 796 F.2d at 1289 n. 5. Since Appellant has a detainer plus a final order of deportation against him, we must conclude that he is "in custody" of the INS for purposes of habeas review.

■ A secondary concern is the statutory requirement that the writ for habeas corpus issue only against the person or agency having current custody of the detainee. 28 U.S.C. § 2243. In this case, the named respondents are the INS and Tom Wooten, the warden at the correctional institution where Galaviz–Medina is incarcerated. Review of the original habeas petition reveals, however, that the only claims presented are against the INS. At first blush, therefore, it would appear that Galaviz–Medina's current custo-

dian has no ability to give him the relief he seeks.

Supreme Court precedent resolves any conflict presented here. In *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126–27, 35 L.Ed.2d 443, the Court held that a challenge to future confinement is actionable in habeas. This is true despite the future nature of the INS's right to custody, because, pursuant to the detainer and deportation order, Warden Wooten acts as the agent of the agency. *Cf. id.* at 489 n. 4, 93 S.Ct. at 1126 n. 4.

Turning to the second part of § 1105a(a)(10), we must consider whether Galaviz–Medina is in custody "pursuant to an order of deportation." As we stated earlier, Appellant not only has a detainer lodged against him but a final order of deportation as well. It is the final order which conferred custody of Appellant to the INS for purposes of filing this habeas action. Therefore, Appellant meets the second requirement of § 1105a(a)(10).

Because Appellant is "in custody pursuant to an order of deportation," Appellant has met the jurisdictional requirements for a habeas claim. However, Appellant's collateral attack by way of habeas corpus is necessarily limited by the very nature of habeas relief. We must determine whether he has raised appropriate habeas claims entitling him to proceed with the petition.

### IV

 We previously held that the district court correctly determined that it is without jurisdiction to hear the merits of deportation orders. 8 U.S.C. § 1105a(a). However, Appellant has met the jurisdictional requirements for habeas review; therefore, the district court could have addressed the merits of the habeas corpus petition by examining whether Appellant brought an appropriate habeas challenge. At the crux of this appeal is Galaviz–Medina's argument that the BIA failed to consider the appropriate factors in denying his request for discretionary relief. This is an attack on the merits of the final deportation order which we have stated must have been brought directly to this court.

Appellant did not raise any specific due process or other constitutional concerns, except perhaps to the extent they are implicit in his contention that the BIA acted in an arbitrary fashion. Upon a careful consideration of the record, we hold that a review of discretionary relief in this case does not rise to the level warranting habeas corpus relief, and Appellant should have sought review under § 1105a(a).

A remand to the district court for consideration of the merits of Appellant's habeas claim is not appropriate since he has not stated proper grounds for habeas relief. Therefore, Appellant's petition is DISMISSED for the reasons stated herein. Also, Appellant's motion for appointment of counsel is DENIED.